J-S20013-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| IRVIN HARPER | : | |
| | : | |
| Appellant | : | No. 3468 EDA 2018 |

Appeal from the Judgment of Sentence Entered October 11, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0011481-2016,
CP-51-CR-0011482-2016

BEFORE:  SHOGAN, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY SHOGAN, J.:                    Filed: October 8, 2020

Irvin Harper ("Appellant") appeals from the judgment of sentence entered after a consolidated jury trial of trial court docket numbers CP-51-CR-001141-2016 and CP-51-CR-00011482-2016.  After careful review, we affirm on the basis of the trial court opinion.

On July 6, 2018, a jury found Appellant guilty of possession with intent to deliver at CR-51-0011481-2016 and possession of a firearm without a license at CP-51-CR-0011482-2016.[1]  After the trial, Appellant pled guilty to two counts of possession of a firearm prohibited.[2]  On October 11, 2018, Appellant was sentenced to an aggregate term of incarceration of ten to twenty years followed

---

[1] 35 P.S. § 780-113(a)(30) and 18 Pa.C.S. § 6106, respectively.

[2] 18 Pa.C.S. § 6105.

by seven years of probation. Appellant's post-sentence motion was denied on October 22, 2018.

On November 19, 2018, Appellant timely filed two notices of appeal. Appellant listed both docket numbers on both notices of appeal. However, the trial court clerk of courts sent only one notice of appeal to this Court for filing; thus, both appeals were assigned a single docket number in this Court—3468 EDA 2018.

On March 5, 2019, Appellant filed a motion to proceed *pro se* and an Application for Writ of Mandamus and of Extraordinary Relief. On March 17, 2019, counsel filed an Application to Withdraw as counsel. Upon consideration of these motions, this Court remanded the matter for the trial court to conduct a hearing pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998). The trial court held a *Grazier* hearing on April 29, 2019, and ruled that Appellant was permitted to proceed *pro se*. Order, 6/24/19, at unnumbered 1. On September 6, 2019, Appellant filed a supplemental Pa.R.A.P. 1925(b) statement of matters complained of on appeal, and on November 4, 2019, the trial court filed a supplemental Rule 1925(a) opinion.[3]

Before we address the merits, we must determine whether these appeals are properly before us. The record reveals that on November 19,

---

[3] Prior to his withdrawal, Appellant's counsel filed two separate Pa.R.A.P. 1925(b) statements raising identical issues. Two different trial court judges issued opinions pursuant to Rule 1925, one addressing and upholding certain pretrial rulings and the other resolving a sentencing issue against Appellant. Those opinions are not germane to our discussion today.

2018, Appellant filed identical notices of appeal at trial court docket numbers CP-51-CR-0011481-2016 and CP-51-CR-0011482-2016.  In **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), our Supreme Court explained that "[t]he Official Note to Rule 341 provides a bright-line mandatory instruction to practitioners to file separate notices of appeal."  **Id.** at 976-977.  "Where . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeals must be filed."  **Id.** at 976 (quoting Pa.R.A.P. 341, note).  The failure to file separate notices of appeal at each docket requires the appellate court to quash the appeal.  **Id.** at 977.  Our Supreme Court held that **Walker** applies prospectively to appeals filed after June 1, 2018.  **Id.**

After our Supreme Court filed its decision in **Walker**, a panel of our Court decided **Commonwealth v. Creese**, 216 A.3d 1142 (Pa. Super. 2019).  In **Creese**, the Majority concluded that the appellant did not comply with the requirements set forth in **Walker**.  Specifically, the appellant in **Creese** filed four identical notices of appeal, each listing all four trial court docket numbers.  **Creese**, 216 A.3d at 1144.  The Majority quashed the appeals, holding "[this Court] may not accept a notice of appeal listing multiple docket numbers, even if those notices are included in the records of each case.  Instead, a notice of appeal may contain only one docket number."  **Id.**

In the instant case, because Appellant's notices of appeal each displayed more than one docket number, we issued a Rule to Show as to why the appeals should not be quashed pursuant to **Walker**.  Rule to Show Cause, 1/3/19.

- 3 -

Appellant filed a timely response explaining that he filed two notices of appeal. Response to Rule to Show Cause, 1/3/19. The Rule was discharged on January 4, 2019, and the matter was referred to this panel. However, during the pendency of the instant appeals, an *en banc* panel of this Court expressly overruled **Creese's** mandate that a notice of appeal may contain only one docket number. **Commonwealth v. Johnson**, ___ A.3d ___, ___, 2020 PA Super 164, *5 (Pa. Super. filed July 9, 2020) (*en banc*)). Specifically, the *en banc* Court opined that where an appellant files a separate notice of appeal at each trial court docket, "[t]he fact that each notice of appeal listed [more than one trial court docket number] does not invalidate [the] notices of appeal." **Id.** Thus, pursuant to **Johnson**, although Appellant's separate notices of appeal bore more than one docket number, the notices of appeal do not run afoul of **Walker** or Pa.R.A.P. 341. Accordingly, we conclude that Appellant may proceed with his appeal.

We initially observe that Appellant's handwritten, *pro se* brief fails to comply with the Rules of Appellate Procedure in numerous ways. The Pennsylvania Rules of Appellate Procedure provide guidelines regarding the required content of an appellate brief as follows:

**Rule 2111. Brief of the Appellant**

**(a) General Rule.** The brief of the appellant, except as otherwise prescribed by these rules, shall consist of the following matters, separately and distinctly entitled and in the following order:

(1) Statement of jurisdiction.

- 4 -

(2) Order or other determination in question.

(3) Statement of both the scope of review and the standard of review.

(4) Statement of the questions involved.

(5) Statement of the case

(6) Summary of the argument.

\* \* \*

(8) Argument for appellant.

(9) A short conclusion stating the precise relief sought.

(10) The opinions and pleadings specified in Subdivisions (b) and (c) of this rule.

(11) In the Superior Court, a copy of the statement of the matters complained of on appeal filed with the trial court pursuant to Rule 1925(b), or an averment that no order requiring a Rule 1925(b) statement was entered.

Pa.R.A.P. 2111(a)(1)–(6); (a)(8)–(11).

Appellant's brief blatantly violates this rule, as it fails to include a statement of jurisdiction, the order or other determination in question, a summary of argument, a statement of the questions involved, a statement of the case, and a summary of the argument. Appellant also failed to attach copies of the trial court opinion and Appellant's Rule 1925(b) supplemental statement to his brief.

We could readily conclude that Appellant's appeal must be quashed pursuant to Pa.R.A.P. 2101. When a party's brief fails to conform to the Rules

of Appellate Procedure and the defects are substantial, an appellate court may, in its discretion, quash or dismiss the appeal. Pa.R.A.P. 2101; **see also Commonwealth v. Tchirkow**, 160 A.3d 798, 804 (Pa. Super. 2017). (Superior Court may quash or dismiss an appeal if the appellant fails to conform to the requirements set forth in the Pennsylvania Rules of Appellate Procedure.). Moreover, although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. **Id.**

Although Appellant's brief is deficient, we conclude that it does not completely prohibit our review. Thus, we decline to quash the appeal and instead, affirm on the well-reasoned opinion of the Honorable J. Scott O'Keefe filed November 4, 2019. The trial court opinion comprehensively discusses and properly disposes of the issues raised in Appellant's supplemental Rule 1925(b) statement of matters complained of on appeal. **See** Trial Court Opinion, 11/4/19, at 8–10 (concluding Appellant's complaints about the lack of a preliminary hearing were waived and rendered meaningless by the jury's guilty verdict); at 11–12 (finding Appellant declined to litigate a motion to suppress); at 13 (determining the cases were properly consolidated for trial); at 14–16 (noting Appellant was not entitled to hybrid representation or representation by counsel of his choice); at 18–19 (deciding Appellant waived claims pf prosecutorial misconduct and that the allegations were without record support); at 20–22 (concluding the evidence was sufficient to support

the convictions); and, at 24 (discerning no error in the admission of a gun into evidence).

Thus, we affirm on the basis of the trial court's opinion. The parties are instructed to attach a copy of the opinion filed on November 4, 2019, to any future filing that references our decision.

Finally, on April 13, 2020, Appellant filed a motion for relief, requesting that a copy of the memorandum filed in this matter be mailed directly to him at SCI-Phoenix. We grant the motion and direct the Prothonotary of this Court to mail a paper copy of the memorandum to:

Irvin Harper

SCI Phoenix

NP-3252

P.O. Box 244

Collegeville, PA 19426

Motion for relief granted. Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/8/20

FILED

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

2019 NOV -4 AM 9:48

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CRIMINAL TRIAL DIVISION |
| | : | |
| Vs | : | 3468 EDA 2018 |
| | : | |
| | : | CP-51-CR-0011481-2016 |
| IRVIN HARPER | : | CP-51-CR-0011482-2016 |

## SUPPLEMENTAL OPINION

**O'KEEFE, J.**

Defendant, Irvin Harper, appeals the judgment of sentence for possession of a controlled substance with intent to deliver and possession of a firearm prohibited, resulting in an aggregate sentence of eight to sixteen years' incarceration. This supplemental opinion addresses the additional issues raised by the defendant, *pro se*, pursuant to the Order of the Superior Court of August 15, 2019.

## PROCEDURAL HISTORY:

Mr. Harper was arrested on November 4, 2016, and charged with possession of a controlled substance with intent to deliver, possession of a controlled substance and possession of a firearm prohibited, docketed at MC-51-CR-0031155-2016. Appellant was arrested at the same time for two counts each of rape, involuntary deviate sexual intercourse, sexual assault, indecent assault, indecent exposure and one count each of kidnapping, possession of a firearm prohibited, unlawful restraint, firearms not to be carried without a license, carrying firearms in public in Philadelphia, terroristic threats and simple assault at MC-51-CR-0031158-2016. Additionally, Mr. Harper was

1

charged at MC-51-CR-0031159-2016 with two counts each of rape, involuntary deviate sexual intercourse and indecent assault with one count each of kidnapping, unlawful restraint, sexual assault, indecent exposure, terroristic threats, simple assault and recklessly endangering another person.

The cases were presented to a grand jury and informations were filed on December 19, 2016. Consolidation was ordered on June 6, 2018 (the subject of a separate opinion) and the matter eventually sent to the undersigned for trial. A jury trial was held from June 27th through July 6, 2018, at which time the defendant was only convicted of the drug charges. Mr. Harper then pled guilty to the bifurcated charge of possession of a firearm prohibited. Appellant was thereafter sentenced to three to six years' incarceration for possession with intent to deliver, a consecutive five to ten years' incarceration for the possession of the firearm prohibited for an aggregate sentence of eight to sixteen years in prison. Post-sentence motions were filed and denied without a hearing and timely appeal made to the Superior Court. On February 22, 2019, this court filed an opinion addressing the only issued raised alleging an excessive sentence.

There is a long and tortured history from that time forward. On March 4th, appellant filed a motion to proceed *pro se* as well as an Application for Writ of Mandamus and of Extraordinary Relief. On March 17, counsel filed an Application to Withdraw as counsel. Upon consideration of these motions, the Superior Court remanded the matter for the trial court to conduct a *Grazier*[1] hearing on March 25, 2019. Mr. Harper followed this with an Application to Compel on March 29th. On April 16th, the Superior Court ordered that the defendant's *pro se* motions be forwarded to appointed counsel noting that *pro se* filings by counseled appellants are disapproved[2]. On April

---

[1] *Commonwealth v. Grazier*, 552 Pa. 9, 713 A.2d 81 (1998).
[2] *Commonwealth v. Ellis*, 534 Pa. 176, 626 A.2d 1137 (1993); *Commonwealth v. Jette*, 611 Pa. 166, 23 A.3d 1032 (2011).

2

29th, the trial court conducted the remanded *Grazier* hearing and ruled that the defendant's request to proceed *pro se* was knowing, intelligent and voluntary and as such Appellant was permitted to self-represent with his court-appointed attorney to remain as back-up counsel. On May 20, 2019, Mr. Harper filed an Application for Relief with the Superior Court, after which the court required this court to notify them in writing of the *pro se* application determination. On June 27th, the trial court notified the Superior Court of the *Grazier* hearing of April 29th and its decision that the defendant's request to self-represent was granted. Mr. Harper filed another Application for Relief on June 28th and again on July 3rd as well a Motion to Amend his 1925(b) Statement on July 8th. Additionally the defendant filed a Motion for Full Discovery as well as a Motion to Disregard the 1925(b) previously filed by his counsel on the same day. On July 10th, the Superior Court granted an extension of time for Appellant to file his brief until September 11th. Mr. Harper filed a new Application for Stay on July 24th, an Application for Relief on August 5th, and a third Application for Extension of Time to File Brief on August 14th. The next day, August 15th, the Superior Court granted the extension of time for Appellant to file his brief until October 11, 2019, further mandating that no further extensions of time would be granted. At the same time, the Superior Court also entered an order remanding the case for 120 days for the *trial court to provide* the defendant with the notes of testimony and *documents that the trial court deems necessary and relevant so that the defendant could make a complete assessment of the issues raised on appeal.* A true and correct copy of the transmittal letter and documents that the trial court provided to the defendant is attached to this supplemental opinion. On September 6, 2019, the defendant filed a supplemental 1925(b) statement, the subject of this supplemental opinion.

## STANDARD OF REVIEW:

3

Whether or not separate indictments should be consolidated is within the sole discretion of the trial court and will only be reversed for a manifest abuse of that discretion resulting in prejudice and clear injustice to the defendant. *Commonwealth v. Newman*, 528 Pa. 393, 398, 598 A.2d 275, 277 (1991) (citing *Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491 (1988)).

The decision to allow an individual to represent himself is within the sound discretion of the trial court and will not be reversed absent a showing that the trial court clearly abused its discretion. An abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised was manifestly unreasonable. *Commonwealth v. El*, 602 Pa. 126, 142, 977 A.2d 1158, 1166-67 (2018).

The denial of a request to remove court-appointed counsel and appoint new counsel is within the sound discretion of the court and will not be reversed absent an abuse of that discretion. *Commonwealth v. Spotz*, 562 Pa. 498, 518, 756 A.2d 1139, 1150 (2000) (citing *Commonwealth v. Segers*, 460 Pa. 149, 154, 331 A.2d 462, 465 (1975)).

When reviewing a claim of prosecutorial misconduct, the standard of review is limited to whether the trial court abused its discretion. *Commonwealth v. Melvin*, 103 A.3d 1, 26 (Pa.Super.2014).

The standard of review for a claim of insufficiency of the evidence is that an appellate court must view the evidence in a light most favorable to the Commonwealth as the verdict winner, and determine whether the evidence presented at trial, including all reasonable inferences that may be drawn therefrom, was sufficient to prove all of the elements of the crime beyond a reasonable doubt. *See Commonwealth v. McCalman*, 795 A.2d 412 (Pa.Super. 2002).

The admission of evidence is within the sound discretion of the trial court and will not be

4

reversed absent a showing that the trial court clearly abused its discretion. An abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised was manifestly unreasonable. *Commonwealth v. Handfield*, 34 A.3d 187, 207-08 (Pa.Super. 2011).

## FACTS

The testimony presented at trial was that in December of 2015, Fatima Vaccarella was living at the Covenant House, a homeless shelter in the Germantown section of Philadelphia. (N.T. 6-28-2018, pp. 42-45). The shelter required the residents to obtain employment or be enrolled in school, or they would be asked to leave. Ms. Vaccarella was walking in a park near the shelter when she was approached by the defendant who asked her if she needed a job, offering her employment hairdressing, washing hair and cleaning. (N.T. 6-28-2018, pp. 46-48). She accepted the offer and accompanied Harper to his house, where the defendant said he had to retrieve something. (N.T. 6-28-2018, pp. 47-49). Ms. Vaccarella related that once inside, the defendant brandished a gun from the inside of his jacket and told her to remove her clothes and to do what he told her. (N.T. 6-28-2018, pp. 49-55). The complainant further testified that the defendant told her to perform oral sex upon him and then engage in sexual intercourse with Harper ejaculating on her chest, and that she was too scared to say anything, just complying to get it all over with. (N.T. 6-28-2018, pp. 49-55). Harper had told the complainant that his nickname was "Gotti". (N.T. 6-28-2018, p. 63, 65). Ms. Vaccarella returned to Covenant House but admitted that she had exchanged phone numbers with the defendant and that the incident was repeated later because she was still scared of him and somehow thought he would still get her a job. (N.T. 6-28-2018, pp. 57-60). The complainant further testified that sometime later, she was outside the homeless shelter when the defendant approached, telling her he wanted her again. Ms. Vaccarella told him no and ran back inside the shelter. Obviously upset and shaking, her roommate pressed her as to what was

5

wrong and she told her roommate everything, eventually being moved from the shelter and making a statement to the police. (N.T. 6-28-2018, pp. 60-65). In the statement, the victim admitted to having previously being involved in prostitution a few years earlier when living in Egypt. (N.T. 6-28-2018, pp. 64-66).

Jessica Tokarczyk testified that when she was twenty-one years old she resided at the Covenant House around October 2016 for approximately three months. (N.T. 6-28-2018, pp. 96-98). The defendant approached her, in a group of people, and offered her money to help him with a drug run. (N.T. 6-28-2018, pp. 98-100). This complainant checked with 'Robin', another resident of the Covenant House, and after receiving assurances that he was alright, Tokarczyk left with appellant. (N.T. 6-28-2018, pp. 97-103). Harper left her in the park for a short time and then reappeared with a car. They rode around for a while, evidently completing his drug run, ending back at his house with hoagies. (N.T. 6-28-2018, pp. 97-101). Mr. Harper had informed this complainant as well that his nickname was "Gotti". (N.T. 6-28-2018, pp. 97-114). This complainant testified that while upstairs the defendant told her she needed to keep her word, that he had given her twenty-five dollars for a drug run, bought her a hoagie and a drink and then he stripped down to his underwear. Tokarczyk stated that she repeatedly told him she did not want to do this, but felt pressured. This complainant stated that the defendant forced her to perform oral sex on him while she was sitting on the bed. (N.T. 6-28-2018, pp. 130-133). She finally removed her clothes and appellant had sexual intercourse with her. (N.T. 6-28-2018, pp. 114-119). Harper put his telephone number in this complainant's cellphone and dropped her off a short distance from the Covenant House. Later that day, Tokarczyk told another resident of what happened, then an administrator, and subsequently the police. (N.T. 6-28-2018, pp. 119-126).

Arlacia Curtis testified that she was a resident of the Covenant House in the spring of 2015

6

when the defendant approached her and asked if she needed a job. Ms. Curtis responded no and walked away from Mr. Harper. (N.T. 6-28-2018, pp. 189-194). This witness further testified that she was walking with her roommate, Bella, when "Gotti" was walking by the door of the Covenant House and said something to Bella which made her extremely upset and she then ran away. When pressed, Bella told her that "Gotti" had offered her a job and that when they went back to his place to fill out an online application on his computer that he pulled out a gun and told her to go upstairs and get undressed. (N.T. 6-28-2018, pp. 190-196).

Toni Seibert is a registered nurse who has worked for the Philadelphia Sexual Assault Response Center for the past twenty years and testified that on October 17, 2016, she examined Jessica Tocarzyk and as part of that exam she took a report on what the victim said happened with appellant. (N.T. 6-29-2018, pp. 54-72). Aimee Della Porta testified that she was a social worker at the Covenant House since March of 2015, and that she spoke with both Bella and Jessica as to the allegations concerning this defendant. (N.T. 7-2-2018, pp. 6-12).

Detective Daniel O'Malley of the Special Victims Unit of the Philadelphia Police Department testified that he was assigned detective of the defendant's cases, that he reviewed the reports as to both victims, including photo arrays and acknowledgments that 626 Federal Street was the place of both occurrences and that he applied for the search warrants in these cases as well as assisted in the execution of the warrants. (N.T. 7-2-2018, pp. 37-92). Detective O'Malley testified that appellant and others were present when the warrants were executed, as to the blue steel handgun with a silver barrel and trigger loaded with nine live rounds recovered from a piece of Tupperware from the kitchen in the property; a large amount of narcotics on the kitchen table with packaging and scales, as well as in a bowl in the kitchen cabinet; and money that the defendant attempted to hand to the landlord when the police entered the premises. (N.T. 7-2-2018, pp. 60-

7

68).

Officer Kevin Keyes testified that he is employed by the Philadelphia Police Department in the Narcotics Field Unit and is a stipulated expert in the field of narcotics. Officer Keyes said he reviewed the reports concerning the confiscated 134 grams of cocaine, two baggies of heroin weighing 20.118 grams, grinders, a scale and packaging, and came to the conclusion that the drugs were possessed with the intent to deliver. (N.T. 6-29-2018, pp. 35-45).

## LEGAL DISCUSSION

### PRELIMINARY HEARING

Appellant raises several complaints concerning the prosecution's presenting his charges to an indicting grand jury instead of holding a preliminary hearing. It needs to be noted that the law in Pennsylvania is crystal clear that once a defendant has gone to trial and been found guilty of a crime, any defect in the preliminary hearing is rendered immaterial. *Commonwealth v. Tyler*, 402 Pa.Super. 429, 432, 587 A.2d 326, 328 (1991); *Commonwealth v. McCullough*, 501 Pa. 423, 461 A.2d 1229 (1983); *Commonwealth v. Waters*, 491 Pa. 85, 418 A.2d 312 (1980); *Commonwealth v. Allen*, 475 Pa. 165, 379 A.2d 1335 (1977). Accordingly, all of appellant's complaints about the lack of a preliminary hearing are without merit. For the sake of thoroughness, the defendant's grievances will be addressed in the order in which they have been presented in the defendant's 1925(b) statement.

> "1.appellant [sic] asserts that his garanteed [sic] right to a preliminary hearing was violated regarding docket number #cp-51-cr-0011481-2016, it was a clear err [sic] of the trial court and this violated appellants [sic] garanteed [sic] right to his four-teenth amendment's [sic] due process and Article one [sic] section nine of the Penn-sylvania state constitution [sic]."
> Supplemental Statement of Matters Complained of on Appeal, p. 1.

First, this issue has been waived. The law in Pennsylvania is crystal clear that issues first

8

raised on appeal and not raised in the trial court are deemed waived. Pa.R.A.P. 302(a). *Commonwealth v. Cain*, 2006 Pa.Super. 228, 906 A.2d 1242 (Pa.Super. 2006) Specifically, complaints concerning an indictment or preliminary hearing must be raised in a motion to quash the indictment or information or they are waived. *See* Pa.R.Crim.P. 556.4(C); *Commonwealth v. Hodge*, 279 Pa.Super. 232, 245, 411 A.2d 503, 509 (1979).

Addressing the issue on its merits, neither the United States nor the Pennsylvania Constitutions provide a constitutional right to a preliminary hearing by a defendant in a criminal proceeding. *Commonwealth v. Mayberry*, 459 Pa. 91, 103, 327 A.2d 86, 92 (1974) (citing *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *Commonwealth v. McCloskey*, 443 Pa. 117, 131-133, 277 A.2d 764, 771-772, *cert. denied*, 404 U.S. 1000, 92 S.Ct. 563, 30 L.Ed.2d 552 (1971)). The pertinent section of Article I, section 9 of the Pennsylvania Constitution states: "In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage..." Clearly, the cited provision of the Pennsylvania Constitution does not confer upon a defendant a right to a preliminary hearing, and in fact specifies prosecutions by indictment or information. As there is no constitutional right to a preliminary hearing, the defendant was not denied a constitutional right by proceeding by way of a grand jury.

> "2.appellant [sic] asserts that the common pleas court of PHILA-DELPHIA [sic] never retained subject matters [sic] jurisdiction of #cp-51-cr-0011481-2016 and it was a err [sic] of the court ton [sic] hold appellants [sic] trial in june [sic] 2018 and to sentence him on 10-11-2018 due to this docket not going to a municipal court for a probable cause hearing first."
> Supplemental Statement of Matters Complained of on Appeal, p. 1.

9

It is assumed that Harper is again bemoaning the lack of a preliminary hearing. The defendant's cases proceeded by way of presentment to a grand jury followed by the issuance of bills of information, as provided by Pennsylvania Rules of Criminal Procedure 556 *et seq*. As this issue was just discussed in the previous section of this opinion, there is no need for it to be reargued here. Likewise, the defendant was convicted by a jury of drug and gun charges, and as noted previously any defect in a preliminary hearing is immaterial. *Commonwealth v. Tyler, supra; Commonwealth v. McCullough, supra*.

> "4.appellant [sic] asserts that the trial court made a major err [sic] in concert with the prosecution when they violated rule 556,and [sic] 556.2 and misused the indicting grand jury procedures,the [sic] trial court abused its descretion [sic] by allowing the prosecution to bring #cp-51-cr=0011481-2016 [sic] in front of a grand jury knowing that docket had nothing to do with the other two cases that involved two witnesses who accused appellant of two separate crimes that went to the grand jury only because of allegations of witness intimidation.appellant [sic] asserts that #CP-51-CR-0011481-2016 was a seperate [sic] case of narcotics and gun violations and that case had nothing to do with the witnesses this was a violation of rule 556,556.2 [sic] and a clear violation of the 14 amendments [sic] due process and article [sic] one section nine of the pennsylvania [sic] state constitution the rights of the accused and the right for appellant to have a preliminary hearing [sic]."
>
> Supplemental Statement of Matters Complained of on Appeal, p. 1.

Again, the lack of a preliminary hearing is of no consequence once a defendant has been convicted by a jury of the charges complained of. Additionally, this issue is likewise waived. The law in Pennsylvania is crystal clear that issues first raised on appeal and not raised in the trial court are deemed waived. Pa.R.A.P. 302(a). Specifically, complaints concerning an indictment or preliminary hearing must be raised in a motion to quash the indictment or information or they are waived. *See* Pa.R.Crim.P. 556.4(C); *Commonwealth v. Hodge*, 279 Pa.Super. 232, 245, 411 A.2d 503, 509 (1979).

10

"5.appelant [sic] asserts that his right to be confronted by the officers who found the narcotics was violated when they failed to testify at a preliminary hearing to show they had probable cause as to the drug and gun violations,those [sic] officers didnt [sic] testify at appellants [sic] trial and this was a clear violation of appellants [sic] right to cross-examination of witnesses against him violating the six amendments [sic] confrontation clause."
Supplemental Statement of Matters Complained of on Appeal, pp. 1-2.

In addition to the fact that the defendant has been found guilty by a jury and the immateriality under the law of the lack of a preliminary hearing as previously discussed in this opinion, the defendant pled guilty to the charge of 18 Pa.C.S. § 6105, Persons not to possess, use, manufacture, control, sell or transfer firearms. (N.T. 7-9-2018, pp. 1-9).

## SUPPRESSION MOTION

Harper next complains that this court failed to conduct a hearing on his oral motion to suppress. Specifically:

"3.the [sic] trial court err [sic] when it did not allow appellant who ask the court threw [sic] a [sic] oral motion to have a suppression hearing regarding #cp-51-cr-0011481-2016,the [sic] trial court abused its descretion [sic] by not allowing appellant to have a garanteed [sic] right of a suppression hearing on 6-26-18 this [sic] was a clear violation of pa.r.crim.p.581 [sic] and the fourth amendment amd [sic] article [sic] one section 8 of the pemmsylvania [sic] state constitution and due process."
Supplemental Statement of Matters Complained of on Appeal, p. 1.

Appellant's claim fails for several reasons. First, when the trial court asked Harper if he wanted the court to review the affidavit of probable cause as a 'four corners suppression motion', the defendant twice responded no, he did not want the court to review it. (N.T. 6-26-2018, pp. 7-11). It is elementary that if a defendant specifically refuses to allow the court to review the affidavit of probable cause as an issue of suppression, he is obviously precluded from claiming the

11

court erred in failing to hear a motion to suppress on that issue. Additionally, the defendant was represented by extremely able counsel who had specifically discussed a four corners motion with the defendant. Counsel advised the defendant that he could not proceed with such a motion as it would have been frivolous and that he could not file a motion that he did not have a good faith basis for. (N.T. 6-26-2018, 7-9).

Finally, as noted above, the defendant was represented by counsel, and the law in Pennsylvania is crystal clear: a defendant in a criminal case has no constitutional right to act as co-counsel before the trial court while represented by an attorney. *Commonwealth v. Pursell*, 555 Pa. 233, 724 A.2d 293, 301 (1999) (citing *Commonwealth v. Ellis*, 534 Pa. 176, 626 A.2d 1137 (1993)). *Pro se* actions have no legal effect where the defendant is represented by counsel and as such, any such application for relief is a nullity. *Id.* Our Supreme Court has opined that the proper procedure is to refer the pleading to counsel and to take no further action on the proposed pleading unless counsel files and moves on the motion. *Commonwealth v. Jette*, 611 Pa. 166, 23 A.3d 1032 (2011); *Commonwealth v. Glacken*, 32 A.3d 750, 753 (Pa.Super. 2011).

## CONSOLIDATION OF CASES

Appellant further contends that the pre-trial court erred in consolidating his cases for trial.

> "6.the [sic] trial court err [sic] and abused its descretion [sic] when it allowed the three cases to be consolidated on june 6 2018. [sic] Judge giovanni o campbell [sic] abused his descretion [sic] the [sic] three cases had no common plan or scheme and they were not committed in the same act or on the same day and this prejudiced the jury and confused the jury."
> Supplemental Statement of Matters Complained of on Appeal, p. 2.

Rule 582(A) of the Pennsylvania Rules of Criminal Procedure provides, in relevant part: "(1) Offenses charged in separate indictments or informations may be tried together if: (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable

12

of separation by the jury so that there is no danger of confusion." Consolidation of offenses requires the prosecution to show that there are shared similarities and details of each crime tending to show motive; intent; absence of mistake or accident; common scheme, plan or design such that proof of one tends to prove the other; or to establish the identity of the person charged. *Commonwealth v. Newman,* 528 Pa. 393, 399, 598 A.2d 275, 278 (1991) (citing *Commonwealth v. Lark,* 518 Pa. 290, 303, 543 A.2d 491, 497 (1988)). The commonality between the two cases is obvious. Both women claim to be approached by the defendant outside of the Covenant House in the Germantown section of Philadelphia – a homeless shelter that requires its residents to be employed; offering both employment; taking both back to his apartment, forcing each to have sex with him and returning them near their residence when finished. Given the similarities of the two incidents, evidence of each offense would have been admissible in a separate trial for the other. Moreover, the distinct offenses were readily capable of separation by the jury so there was no danger of confusion. Although there were similarities, the two incidents were easily distinguishable from each other. As to the prejudice component, it is extremely important to note that the defendant was acquitted of any of the sexual offenses, merely found guilty of the drugs found in his apartment and the gun charge to which he pled guilty.

The law is clear that the trial court's decision whether to consolidate separate indictments is within the sole discretion of the trial court and will only be reversed for a manifest abuse of that discretion resulting in prejudice and clear injustice to the defendant. *Commonwealth v. Newman,* 528 Pa. 393, 398, 598 A.2d 275, 277 (1991) (citing *Commonwealth v. Lark,* 518 Pa. 290, 543 A.2d 491 (1988)). Accordingly, this claim of the defendant is without merit.

## SELF-REPRESENTATION

The defendant now claims he was denied his right of self-representation and that as such

he is entitled to a new trial. A criminal defendant's right to counsel includes the right to waive counsel and represent one's self. *Commonwealth v. El*, 602 Pa. 126, 134, 977 A.2d 1158, 1162 (2018) (citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Commonwealth v. Szuchon*, 506 Pa. 228, 484 A.2d 1365 (1984)). However, the right of self-representation is not automatic. Only timely, clear and unequivocal requests trigger an inquiry into whether the request is knowing, intelligent and voluntary. *Commonwealth v. El, supra* (citing *Faretta v. California, supra*, 422 U.S. at 836; *Commonwealth v. Davido*, 582 Pa. 52, 868 A.2d 431, 438 (2005), *cert. denied*, 546 U.S. 1020, 126 S.Ct. 660, 163 L.Ed.2d 534 (2005)).

Particularly the defendant avers:

> "7.the [sic] trial court abused its descretion [sic] by not having a grazier [sic] hearing when appellant filed a motion on 1-25-2018 asking the trial court to proceed pro se,the [sic] court never heard his motion and held [sic] a proper hearing,this [sic] forced appellant to use a [sic] ineffective counsel james [sic] Lloyd esq. [sic] violating his 6 [sic] amendment right."
> Supplemental Statement of Matters Complained of on Appeal. p. 2.

The basis of the defendant's claim is that he filed what was titled an Omnibus Motion on January 25, 2018, wherein Harper asked that the court appoint him "a co-counsel" as well as an investigator. (Motion of 1-25-2018). Appellant already had counsel appointed to represent him – in fact this was the defendant's third counsel, having already had the Defender Association of Philadelphia as well as W. Fred Harrison, Jr., Esquire representing him. A request to have co-counsel appointed is inappropriate given that, as previously noted, the courts will not allow hybrid representation. *Commonwealth v. Pursell*, 555 Pa. 233, 724 A.2d 293, 302 (1999) (citing *Commonwealth v. Ellis*, 534 Pa. 176, 626 A.2d 1137 (1993)); *Commonwealth v. Jette*, 611 Pa. 166, 23 A.3d 1032 (2011); *Commonwealth v. Glacken*, 32 A.3d 750, 753 (Pa.Super. 2011). Mr. Harper's request to have co-counsel was inappropriate.

14

Additionally, prior to trial, Mr. Harper complained that he did not want the assigned attorney to represent him. (N.T. 6-26-2018, pp. 3-14). Appellant never requested to represent himself – only that he did not want this attorney, and at that time the trial court advised appellant that he did not have the right to a court-appointed attorney of his choosing. At that point Harper did not ask to represent himself. (N.T. 6-26-2018, pp. 3-14). Had he done so, a *Grazier*[3] hearing would have been held. Harper's failure to request to represent himself at that time is a waiver of any such complaint. *Commonwealth v. El, supra* (citing *Faretta v. California, supra; Commonwealth v. Davido, supra*).

## FAILURE TO APPOINT NEW COUNSEL

Contrary to the defendant's previous claim, Harper also contends that the trial court erred in failing to remove court-appointed counsel and appoint new counsel, specifically:

> "8.appellant [sic] assert [sic] that it was a err [sic] of the trial court when on 6-26-1028 [sic] he ask [sic] the court to remove attorney james lloyd esq [sic] due to them having a fall [sic] out the [sic] court abused its descretion [sic] and this violatrd [sic] appellants 6 [sic] amendment right to proper counsel and a fair trial."
> Supplemental Statement of Matters Complained of on Appeal, p. 2.

Amazingly, the defendant points to the same exchange as in the previous section of this opinion to contend he was asking for new counsel, not to proceed *pro se*. The defendant complained that he did not want his then counsel, but when asked specifically what his complaint was with counsel, the only answer provided was that he wanted a motion to suppress. As noted earlier, when the trial court inquired if the defendant wanted the court to review the four corners of the affidavit as a four corners suppression motion, the defendant declined.

Although the Sixth Amendment to the United States Constitution provides that a criminal

---

[3] *Commonwealth v. Grazier*, 552 Pa. 9, 713 A.2d 81 (1998).

defendant is entitled to representation by counsel at all critical stages of the prosecution, a defendant who does not employ an attorney at his own expense, but has court-appointed counsel at public expense, does not have the right to counsel of his choosing. *Commonwealth v. Kelly*, 5 A.3d 370, 377-78 (Pa.Super.2010) (citing *Commonwealth v. Lucarelli*, 601 Pa. 185, 971 A.2d 1173, 1178-79 (2009)). *See also Commonwealth v. Meehan*, 427 Pa.Super. 261, 270-71, 628 A.2d 1151, 1155 (1993); *Commonwealth v. Neal*, 387 Pa.Super. 165, 174-75, 563 A.2d 1236, 1241 (1989). Furthermore, only when the defendant has presented a substantial, clear and unequivocal reasons for a change of appointed counsel will new counsel be appointed. "A motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons." Pa.R.Crim.P. 122(C). In order to satisfy this standard, the accused must demonstrate he has an irreconcilable difference with counsel that precludes the attorney from representing him. *Commonwealth v. Spotz*, 562 Pa. 498, 518, 576 A.2d 1139, 1150 (2000) (citing *Commonwealth v. Tyler*, 468 Pa. 193, 197, 360 A.2d 617, 619 (1976)). Appellant's unspecified and un-enumerated allegations did not warrant dismissal of his court-appointed counsel and appointment of a new attorney. Although counsel and appellant did not like working with each other, Harper offered no reason why counsel would be incapable of zealously representing him. The defendant's failure to specify any substantial reason for the removal of counsel required the court to continue appointed counsel's representation, and therefore no abuse of discretion. As such, the defendant's claim is without merit.

## PROSECUTORIAL MISCONDUCT

Harper next attacks the prosecution alleging deliberate misconduct, to wit:

> "9.appellant [sic] asserts that the commonwealth [sic] used false omitted affidavits geting [sic] probable cause for appellants [sic] arrest and search warrants that was provided by detective omalley [sic] #695 and this evidence was used threw [sic] out appellants [sic] trial

16

proceedings violating his right to a fair trial and appellant asserted a motion to the court on 9-7-2017 asking for a franks [sic] hearing to challenge the veracity of the trufulness [sic] of the affidavits."
Supplemental Statement of Matters Complained of on Appeal, p. 2.

As well as:

"10.appellant [sic] asserts that a.d.a elizabeth fischer [sic] is in direct violation of prosecutorial misconduct [sic] when she in [sic] concert with detective omalley [sic] #695 to use [sic] false affidavits and false testimony to the court knowing that information was false and she failed to fix the false testimony to the court knowing that information was false and she failed to fix the false statements used against appellant."
Supplemental Statement of Matters Complained of on Appeal, p. 2.

And:

"14. Appellant asserts that prosecutor Elizabeth Fischer is in direct violation of prosecutorial misconduct [sic] when she lied to the court regarding the weight of the narcotics to make appellant appear to be a larger drug dealer then [sic] he was said to be to enhance appellant's sentence if he was found guilty. The prosecution also presented Officer Keys [sic] who lied on the stand and framed appellant as to the weight of the narcotics and appellant has the proof from the lab reports. A.D.A. Fischer lied to the trial court and she also presented Officer Key's [sic] who lied and framed appellant and she failed to correct that testimony knowing Officer Key's [sic] lied to the court and provided false information."
Supplemental Statement of Matters Complained of on Appeal, p. 3.

Our courts have defined such misconduct as when "the prosecutor, a person who holds a unique position of trust in our society, has abused that trust in order to prejudice and deliberately mislead [the factfinder]." *Commonwealth v. Melvin*, 103 A.3d 1, 26 (Pa.Super.2014) (quoting *Commonwealth v. Pierce*, 537 Pa. 514, 645 A.2d 189, 197 (1994)). "Prosecutorial misconduct will justify a new trial where the unavoidable effect of the conduct or language was to prejudice

17

the factfinder to the extent that the factfinder was rendered incapable of fairly weighing the evidence and entering an objective verdict. If the prosecutorial misconduct contributed to the verdict, it will be deemed prejudicial and a new trial will be required." *Commonwealth v. Melvin*, 103 A.3d 1, 26 (Pa.Super.2014) (quoting *Commonwealth v. Francis*, 445 Pa.Super. 353, 665 A.2d 821, 824 (1995)).

As concerns the first two allegations of misconduct, Pennsylvania Rule of Appellate Procedure 1925(b) requires that the Statement of Matters Complained of on Appeal must sufficiently, concisely and coherently identify the issues to be raised. *See Commonwealth v. Ray*, 134 A.3d 1109, 1114 (Pa.Super.2016); *Commonwealth v. Dowling*, 778 A.2d 683 (Pa.Super.2001). As the Superior Court has noted, "Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. Rule 1925 is thus a crucial component of the appellate process." *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306, 308 (1998). When a defendant fails to adequately identify, in a concise manner, the issues he seeks to pursue on appeal, the trial court is impeded in its preparation of a legal analysis pertinent to those issues. *Commonwealth v. Dowling, supra*, 778 A.2d at 686; *Commonwealth v. Ray, supra*; *In re Estate of Daubert*, 757 A.2d 962, 963 (Pa.Super.2000). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Butler*, 756 A.2d 55, 57 (Pa.Super.2000) (citing *Giles v. Douglas*, 747 A.2d 1236, 1237 (Pa.Super.2000)). Appellant does not identify what false or omitted statements were included in the affidavit of probable cause or propounded by the attorney and/or detective for the Commonwealth. Having no idea of what error the defendant is claiming, these issues in Appellant's statement fails to adequately identify the point of contention, and therefore it is waived.

Likewise, Harper's final contention of misconduct claims the prosecution mischaracterized

18

the weight of the drugs involved, failing to sufficiently develop the claim in order to allow this court to adequately review the allegation. Accordingly, this issue is likewise waived. *Commonwealth v. Dowling, supra,* 778 A.2d at 686; *Commonwealth v. Ray, supra; In re Estate of Daubert,* 757 A.2d 962, 963 (Pa.Super.2000).

Appellant claims that the facts presented in the application for search and arrest warrants were false and presented in reckless disregard of the truth. A thorough review of the record fails to substantiate this claim at all, and Harper fails to produce any evidence to support his claims. The record is void of any confirmation of the defendant's claim that the underlying circumstances were false or that the officers presented false information to the issuing authority knowingly and deliberately or in reckless disregard of the truth or that the defendant presented enough evidence to require a hearing. *See Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978); *Commonwealth v. Iannaccio,* 505 Pa. 414, 426, 480 A.2d 966, 972 (1984); *Commonwealth v. Hall,* 451 Pa. 201, 206, 302 A.2d 342, 345 (1973). Accordingly, these claims need to be dismissed.

## SUFFICIENCY OF THE EVIDENCE

Defendant next contends that there was insufficient evidence presented at trial to find him guilty of any of the charges of which he was convicted. When evaluating a claim of insufficiency of the evidence, we must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." *Commonwealth v. Hughes,* 521 Pa. 423, 555 A.2d 1264, 1267 (1989). Further, the evidence must be viewed "in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." *Id.* "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so

19

weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa.Super.2013) (*en banc*); *Commonwealth v. Thomas*, 65 A.3d 939, 943 (Pa.Super.2013) (citing *Commonwealth v. Ratsamy*, 594 Pa. 176, 934 A.2d 1233, 1236 n. 2 (2007)). Furthermore, the prosecution may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super. 2001). Only where the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances is a defendant entitled to relief. *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa.Super.2013) (*en banc*). The appellate court does not re-weigh the evidence or substitute their judgment for that of the fact-finder. *Id.*

Specifically the defendant complains:

> "11.appellant [sic] asserts that the commonwealth's [sic] evidence
> was insufficient to convict him of a violation of firearms in public
> when the jury found him not guilty of every other charge involned
> [sic] with a violation of firearms,the [sis] prosecution never pre-
> sented to the trial court a gun regarding #cp-51-cr-0011482-2016
> and it was a err [sic] of the court to allow the commonwealth [sic]
> to put the appellant on trial for a gun that was never recoverd [sic]
> and presented to the court that was the silver gun that was used in
> the crime and this confused the jury."
> Supplemental Statement of Matters Complained of on Appeal, p. 2.

As well as:

> "13. Appellant asserts that the Commonwealth never proved Appel-
> lant had a concious [sic] dominion over the contraband or that Ap-
> pellant had constructive possession over the narcotics and the gun
> that was found in the apartment."
> Supplemental Statement of Matters Complained of on Appeal, p. 3.

Appellant's contention is that insufficient evidence was presented to convict him of possession of a gun as well as narcotics. First, it has to be noted that the defendant pled guilty to the

20

gun charge. (N.T. 7-09-2018, pp. 3-9).

> The Crier: "Irvin Harper, to this docket number, CP-51-CR-0011481-2016, you are being charged with firearm prohibited, how do you plead?
> The Defendant: Guilty.
> The Crier: And to this docket number, CP-51-CR-0011482-2016, you are being charged with possession of a firearm prohibited, how do you plead?
> The Defendant: Guilty." (N.T. 7-9-2018, pp. 8-9).

Accordingly, the defendant's complaint is without merit.

As to the complaint concerning the drugs, the apartment from which the drugs were confiscated was the apartment the two complainants identified as to where they were taken, the drugs, together with the bagging material, grinder and scales were on the kitchen table, with the paraphernalia, in plain view of everyone in the premises. (N.T. 7-02-2018, pp. 48-57; N.T. 6-29-2018, pp. 6-12). The defendant was on the premises when the arrest warrant was being served and his license was registered at that address. (N.T. 7-2-2018, pp. 48-60). Mr. Harper was attempting to give the owner of the apartment building a large sum of money. (N.T. 7-2-2018, pp. 59-60). The defendant occupied the third floor of the building, where the narcotics were found. (N.T. 7-2-2018, pp. 59-65). The complainant Fatima Vaccarella had described the gun that she was assaulted with as a silver gun. The loaded gun found in the third floor of 626 Federal Street was a blue gun, with a silver colored barrel, a silver colored rod and a silver colored trigger. (N.T. 7-2-2018, pp. 63-66). A set of keys with the dog tags of Samuel Harper together with various proofs of residence for Irving Harper and Turquoise Lee Claxton were recovered from the third floor of the premises. (N.T. 7-2-2018, pp. 64-67).

The crux of the defendant's complaint is that since there were other people, specifically his girlfriend, who had access to the apartment that he could not be found in possession of the drugs. Our Supreme Court has opined

21

> "Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as 'conscious dominion.'"

*Commonwealth v. Mudrick,* 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986) (citing *Commonwealth v. Davis,* 444 Pa. 11, 280 A.2d 119, 121 (1971)). To prove conscious dominion, the prosecution must present evidence to show that the defendant had *both* the power to control the narcotics and the intent to exercise such control. *Commonwealth v. Heidler,* 741 A.2d 213, 216 (Pa.Super. 1999); *Commonwealth v. Gladden,* 445 Pa.Super. 434, 665 A.2d 1201 (1995), *appeal denied,* 544 Pa. 624, 675 A.2d 1243 (1996); *Commonwealth v. Magwood,* 371 Pa.Super. 620, 538 A.2d 908 (1988), *appeal denied,* 519 Pa. 653, 546 A.2d 57 (1988). When the contraband is not found on the defendant's person, constructive possession can be shown to satisfy the prosecution's evidentiary burden and constructive possession may be established by the totality of the circumstances. *Commonwealth v. Macolino,* 503 Pa. 201, 206, 469 A.2d 132, 134 (1983), *Commonwealth v. Fortune,* 456 Pa. 365, 318 A.2d 327 (1974). The Commonwealth may establish the elements of the crime entirely by circumstantial evidence. *Commonwealth v. Ramos,* 392 Pa.Super. 583, 573 A.2d 1027, 1032 (1990), *allocator denied,* 589 A.2d 692 (1990).

In the present case, it is crystal clear that sufficient evidence was presented to find the defendant in possession of the narcotics in his apartment, which he had exited only when the police were entering the building – after taking a gas powered saw to the iron gate. Several proofs of residence identified the premises as the defendant's residence, the Department of Motor Vehicles has the defendant's vehicle registered to the premises, and the two complainants had identified Harper's apartment. Additionally, the victim, Jessica Tokarczyk, testified that when the defendant

22

first contacted her, he told her he needed to do a drug run and asked her to go with him, which she did. The evidence was not only sufficient, but overwhelming.

## ADMISSIBILITY OF EVIDENCE

The defendant's last complaint is that the trial court improperly allowed the admission of evidence during trial, specifically:

> "12.appellant [sic] asserts that it was a err [sic] of the court to permit the black gun that was recoverd [sic] on federal street [sic] the day he was arrested and it was a clear err [sic] when judge o campbell [sic] ruled that the gun was admissible and was allowed to be consolidated at his trial knowing the witness steated [sic] it was a silver gun and that confused the jury."
> Supplemental Statement of Matters Complained of on Appeal, p. 2.

The standard of review for a claim of inadmissibility of evidence is that the admission of evidence is within the sound discretion of the trial court and will not be reversed absent a showing that the trial court clearly abused its discretion. An abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised was manifestly unreasonable. *Commonwealth v. Handfield*, 34 A.3d 187, 207-08 (Pa.Super. 2011).

Appellant contends the pre-trial court erred in allowing the prosecution to present the handgun found in the defendant's apartment during the trial, alleging that it was not the gun that the complainant described. While it is true that Ms. Vaccarella told the police that the gun she was threatened with by the defendant was a big silver gun, the pistol retrieved from the defendant's apartment was a blue steel gun, the barrel, rod and trigger and trigger guard were all silver. The law recognizes that all relevant evidence presented by the prosecution is intended to prejudice the defendant – it is only the evidence that is so prejudicial that it would inflame the jury that becomes inadmissible. The trial court is not required to sanitize the trial to eliminate any unpleasant facts from the jury's consideration. If the facts form part of the history and natural development of the

23

events and offenses with which the defendant is charged. *Commonwealth v. Broaster*, 863 A.2d 588, 592 (Pa.Super.2004) (citing *Commonwealth v. Serge*, 837 A.2d 1255, 1260-61 (Pa.Super.2003)).

Our Supreme Court has ruled

> "[a] weapon shown to have been in a defendant's possession may properly be admitted into evidence, even though it cannot positively be identified as the weapon used in the commission of a particular crime, if it tends to prove that the defendant had a weapon similar to the one used in the perpetration of the crime."

*Commonwealth v. Broaster*, 863 A.2d 588, 592 (Pa.Super.2004) (quoting *Commonwealth v. Williams*, 537 Pa. 1, 16, 640 A.2d 1251 (1994)). In the instant case, the pre-trial court did not abuse its discretion by permitting the Commonwealth to present the handgun found in the defendant's apartment to the jury. The probative value of the handgun outweighed any prejudice to this defendant. Accordingly, this issue is without merit.

Accordingly, the judgment of sentence of this court should be affirmed.

**BY THE COURT:**

**J. SCOTT O'KEEFE, J.**

**DATE: November 4, 2019**

24

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA     :     **CRIMINAL TRIAL DIVISION**

           :

           :

        **Vs**           :     **3468 EDA 2018**

           :

           :     **CP-51-CR-0011481-2016**

    **IRVIN HARPER**       :     **CP-51-CR-0011482-2016**

### Proof of Service

I hereby certify that I am on this day serving the foregoing Court's Opinion upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P. 114:

Defendant:

Mr. Irvin Harper
#NP-3252
S.C.I. Phoenix
P.O. Box 244
Collegeville, PA 19426

Defense Attorney:

James Lloyd, Esquire
1315 Walnut Street, Suite 1605
Philadelphia, PA 19107

Type of Service:     ( ) Personal (X) First Class Mail ( ) Interoffice ( ) Other, please specify

District Attorney:

Lawrence Jonathan Goode, Esquire
Appeals Unit
District Attorney's Office
3 South Penn Square
Philadelphia, PA 19107

Type of Service:     ( ) Personal ( ) First Class Mail (X) Interoffice ( ) Other, please specify

Date: November 4, 2019

_Allison M. O'Keefe_
Allison M. O'Keefe, Law Clerk

25



FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
COURT OF COMMON PLEAS
JUDICIAL CHAMBERS

J. SCOTT O'KEEFE
JUDGE

THE JUSTICE JUANITA KIDD STOUT CENTER
FOR CRIMINAL JUSTICE
1301 FILBERT STREET, SUITE 1221
PHILADELPHIA, PA 19107
(215) 683-7080/81
FAX: (215) 683-7082

August 29, 2019

Mr. Irvin Harper, #NP3252
SCI Phoenix
PO Box 244
Collegeville, PA 19426

      **RE:**    **Commonwealth v. Irvin Harper**
              **CP-51-CR-0011481-2016**
              **CP-51-CR-0011482-2016**
              **3468 EDA 2018**

Dear Mr. Harper:

Pursuant to the Order of the Superior Court filed August 15, 2019, I am enclosing herewith the following notes of testimony: June 26, 2018, June 27, 2018, June 28, 2018, June 29, 2018, July 2, 2018, July 5, 2018, July 6, 2018, July 9, 2018, October 11, 2018, and April 29, 2018.

Also enclosed herewith Motion to Modify and Reconsider Sentence with Denial. Trial Exhibit List, notes of testimony December 13, 2016, 75-49 Detective O'Malley (C-2), Affidavit of Probable Cause (C- 3), Sketch "Gotti" (C-4), Arrest Paperwork (229 Flow chart, Medical checklist-Exhibit C-5), 483-Jessica Tokarczyk (C-6), 483-Aimee Della-Porta (C-7), 483 – Robin Holmes (C-8), 483-Fatimah Vaccarella (C-9), 483 Arlacia Curis (C-10), 483 Cara Mastro (C-11), Photo array 10-18-2016 (C-12), photo imager – Fatimah Vaccarella (C-13), photo arrays 10-20-16 and 10-24-16 (C14), PSARC Meds (C-15), Search Warrant 198201 (C-16), Certificate of non-licensure (C17), Search Warrant 198202 (C-18), Search Warrant 198203 (C-19), Search warrant 198211 (C-20), Property Receipt 3276840 (C-21), Property Receipt 3276839 (C-22), Property Receipt 3276948 (C-23), Property Receipt 3276915 (C-24), Property Receipt 3276914 (C-25), Property Receipt 3276949 (C-26), Property Receipt 3257599 (C-27), Property Receipt 3265301 (C-28), Property Receipt 3257600 (C-29), Property Receipt 3276950 (C-30), Trace Report (C-31), DNA reports (C-32), Seizure analysis (C-33), Ballistics Report (C-34), 75-49 and PARS (C-35), photos of Federal Street (C-40), Photos of Marion Street (C-41), Photos of Grand Marquis (C-42), photos from PSARC (C-43), Stipulation (C-47), Search Warrant 204116 (C-48), Property Receipt 3310793 (C-49), Stipulation (C-50), text messages (D-1).

**FILE COPY**

Thank you for your time and consideration in this matter.

Very truly yours,

*Allison O'Keefe*

Allison M. O'Keefe, Law Clerk to
The Honorable J. Scott O'Keefe, Judge

JSO'K/lk
Enclosures

cc:     District Attorney's Office (w/o enclosures)
        Appeals Division
        3 South Penn Square
        Philadelphia, PA

        James Lloyd, Esquire (w/o enclosures)
        1315 Walnut Street
        Suite 1605
        Philadelphia, PA 19107